IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA,    )
                             )
            Plaintiff,       )
                             )        No. 3:12-CR-60
v.                           )
                             )        (GREER / SHIRLEY)
RICHARD R. BAUMGARTNER,      )
                             )
            Defendant.       )

## REPORT AND RECOMMENDATION

All pretrial motions in this case have been referred to the undersigned pursuant to 28

U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District

Court as may be appropriate. This case came before the Court on August 27, 2012, for a motion

hearing on the Defendant's pending pretrial motions, including four motions to dismiss the

Indictment:

> (1) Motion to Dismiss Counts 1 Through 7 for Failure to Allege an
> Offense [Doc. 17];
>
> (2) Motion to Dismiss Indictment: Prosecution Violates the Tenth
> Amendment to the United States Constitution [Doc. 19];
>
> (3) Motion to Dismiss Counts 1 Through 7: The Charges as Alleged
> Conflict with First Amendment Principles and are Unconstitutional
> [Doc. 21]; and
>
> (4) Motion to Dismiss the Indictment as an Abuse of Prosecutorial
> Discretion [Doc. 23].

Assistant United States Attorneys David P. Lewen and Zachary C. Bolitho appeared on behalf of the

Government. Attorneys Donald A. Bosch and Ann C. Short represented the Defendant, who was

also present. After hearing the parties' arguments, the Court took the motions under advisement. On September 19, 2012, the Court permitted [Doc. 61] the Defendant to add supplemental authority [Doc. 62].

## I. POSITIONS OF THE PARTIES

Defendant Baumgartner is charged in a seven-count Indictment [Doc. 3] with misprision of a felony on or about June 2009; October 30, 2009; November 10, 2009; February 8, 2010; May 2010; August 27, 2010; and October 2010. The Indictment alleges that Deena Castleman and others participated in a conspiracy to obtain and distribute quantities of controlled substances of which the Defendant had actual knowledge. [Doc. 3, ¶1]. The Indictment alleges that between June 2009 and October 2010, the Defendant concealed the conspiracy to distribute controlled substances by making material misrepresentations about Deena Castleman to a sitting Anderson County Criminal Court Judge (Counts 1 and 3), the staff at Mercy Medical Center (Count 2), a sitting Knox County General Sessions Court Judge (Count 4), the Transitional Housing Director of the YWCA (Count 5), a sitting Knox County Juvenile Court Magistrate (Count 6), and a Knox County Assistant District Attorney General (Count 7). Each count also alleges that the Defendant failed to notify a judge or other person in civil or military authority under the United States about the conspiracy.

The Defendant calls for the dismissal of the Indictment, arguing that the Indictment (1) fails to state an offense because it does not allege that he made material misrepresentations to a federal authority, (2) violates the First Amendment to the United States Constitution because it prosecutes the Defendant for speaking to state or private citizens, (3) violates the Tenth Amendment

2

because it requires a state judge to report a federal crime to federal authorities or risk federal prosecution, and (4) was obtained through an abuse of prosecutorial discretion. The Government responds that the Indictment properly alleges all the elements of misprision of a felony, does not violate the Defendant's constitutional rights under the First or Tenth Amendments, and was not sought for any improper purpose.

## II. ANALYSIS

Our Constitution requires that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment by a grand jury[.]" U.S. Const. amend. V. The Defendant challenges the Indictment, arguing: (1) it fails state the offense of misprision of a felony because it does not allege that he made material misrepresentations to a federal authority figure; (2) the charges, as alleged, conflict with his freedom of speech under the First Amendment;(3) the charges, as alleged, violate the Tenth Amendment by requiring a state official to report a federal crime to federal authorities; and (4) the Government abused its prosecutorial discretion by bringing the instant Indictment when there was no substantial federal interest in doing so. The Court will address each of these arguments in turn.

### A. Failure to State an Offense

The Defendant first argues [Doc. 17, 18, and 52] that the Indictment must be dismissed because it fails to state the offense of misprision of a felony. The statute charging misprision of a felony states as follows:

Whoever, having knowledge of the actual commission of a felony

3

> cognizable by a court of the United States, conceals and does not as
> soon as possible make known the same to some judge or other person
> in civil or military authority under the United States, shall be fined
> under this title or imprisoned not more than three years, or both.

18 U.S.C. §4. The Defendant contends that when, as in the instant case, the concealment element of misprision is alleged to have occurred by a verbal misrepresentation, that verbal misrepresentation must have been to a federal authority figure. He asserts that this requirement that the misrepresentation be to a federal authority figure is consistent with existing case law and pattern jury instructions and is the only way to interpret the misprision statute to render this application of the statute constitutional under Congress's Commerce Clause powers. The Government responds [Doc. 33] that the Indictment sufficiently pleads all elements of misprision of a felony and that the Defendant's arguments actually amount to a challenge to the sufficiency of the Government's proof, a matter which cannot be determined before trial.

"The indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1). As a general rule, an indictment passes constitutional muster if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974); United States v. Landham, 251 F.3d 1072, 1079 (6th Cir. 2001) (quoting Hamling). An indictment may allege the charges using the words of the statute itself as long as it gives all the elements of the offense "'fully, directly, and expressly[.]'" Hamling, 418 U.S. at 117 (quoting United States v. Carll, 105 U.S. 611, 612 (1882)); Landham, 251 F.3d at 1079. Moreover, the statutory language "'must be accompanied with such a statement of the facts and

circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged.'" Hamling, 418 U.S. at 117-18 (quoting United States v. Hess, 124 U.S. 483, 487(1888)); Landham, 251 F.3d at 1079.

In this case, each count alleges that on or about a certain date,

> in the Eastern District of Tennessee, the defendant **RICHARD R. BAUMGARTNER, a/k/a/ "JB," a/k/a "Judge B,"** having knowledge of the actual commission of a felony cognizable by a court of the United States, to wit, conspiracy to distribute controlled substances, [namely or including] hydrocodone, oxycodone, Percocet, Suboxone, Xanax, and Roxicodone, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C), did conceal the same by making material misrepresentations about Deena Castleman, a/k/a Deena Shelek, to [a county judge or the staff at Mercy Medical Center or the Transitional Housing Director of the YWCA or the Knox County District Attorney], and did not as soon as possible make known the same to some judge or other person in civil or military authority under the United States.

[Doc. 3]  The Sixth Circuit has described "the four elements necessary to sustain a conviction for misprision of a felony as: (1) the principal committed and completed the felony alleged; (2) the defendant had knowledge of the fact; (3) the defendant failed to notify the authorities; and (4) the defendant took affirmative steps to conceal the crime of the principal." United States v. Goldberg, 862 F.2d 101, 104 (6th Cir. 1988).  "Mere knowledge of the commission of the felony or failure to report the felony, standing alone, is insufficient to support a conviction of a misprision of a felony." Id.  Instead, in addition to knowledge and the notice element, misprision requires  requires an affirmative act of concealment.  See id.

The Defendant argues that when a defendant is alleged to have committed this fourth

element, the concealment element, by making untruthful statements, those statements must be to a federal authority. He asserts that this requirement

> follows logically and necessarily from the **federal** nature of the criminal offense of misprision of a felony. Lying is an affirmative step to conceal because it will impede the **federal** authorities' discovery of a **federal** offense. Statements, truthful or otherwise, made to other than **federal** authorities do not impede or conceal the existence of a **federal** offense.

[Doc. 17, ¶10 (emphasis in original)] In support of his argument, the Defendant contends that (1) construing misprision to require that the concealment by untrue statements be to a federal authority is the only way to comport with the Commerce Clause, (2) misprision cases in which concealment is alleged to have occurred through misrepresentations by a defendant share a common theme in that the misrepresentations were to federal authority figures, and (3) the pattern jury instructions for the Fifth and Tenth Circuits require that the misrepresentation be to a federal authority.

Before turning to the Defendant's three arguments, the Court begins with that basic premise of statutory interpretation, look first to the plain language of the statute. "The language of the statute is the starting point for interpretation, and it should also be the ending point if the plain meaning of that language is clear." United States v. Choice, 201 F.3d 837, 840 (6th Cir. 2000) (citing United States v. Ron Pair Enterprises, 489 U.S. 235, 241 (1989)). Section 4 of Title 18 punishes "[w]hoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States[.]" In contrast to the notice element, which requires that the individual should have given notice to a federal authority, the plain language of the concealment element does not require that the concealment be directed to any

6

particular person or entity. This finding should be the end of our inquiry, but the Defendant argues that to interpret the statute in this way renders it unconstitutional, at least in cases in which the concealment is alleged to have occurred by misrepresentation. He maintains that unless the misrepresentation is to a federal authority, the application of the statute exceeds Congress's power under the Commerce Clause because there is no federal nexus to the action of concealment. He also argues that his interpretation is supported by a review of misprision cases involving verbal concealment and the pattern jury instructions for the Fifth and Tenth Circuits.

*(1) Commerce Clause*

"Every law enacted by Congress must be based on one or more of its powers enumerated in the Constitution." United States v. Morrison, 529 U.S. 598, 607 (2000) (citing Marbury v. Madison, 1 Cranch 137, 176, 2 L. Ed. 60 (1803)). The Defendant argues that in order to interpret the misprision statute in a way that renders it constitutional when verbal concealment is alleged, the misrepresentation must have been to a federal authority. To find otherwise, the Defendant contends, would make the reach of the misprision statute exceed Congress's powers under the Commerce Clause.[1]

The Court finds the Defendant's initial premise that Congress had to have enacted the misprision statute pursuant to its power under the Commerce Clause to be wrong. The

---

[1]The Defendant concludes [Doc. 52, p.10] that Congress had to have enacted the misprision statute under its Commerce Clause powers by process of elimination, stating that the misprision statute "bears no relation to Congress's authority under the Spending Clause or the Necessary and Proper Clause." [Doc. 52, p.10] He then proceeds to apply a Commerce Clause analysis despite his observation that the misprision statute, on its face, "has nothing to do with 'commerce' or any sort of economic enterprise." [Doc. 52, p. 13]

misprision statute aids in the enforcement of other federal laws by requiring that those with knowledge of a federal felony not conceal that felony. Congress enacted this statute pursuant to its power under the Necessary and Proper Clause, which gives Congress the power "[t]o make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof." U.S. Const. Art. I, §8, cl.18. Accordingly, the Defendant's Commerce Clause argument is inapposite.

Even if the Court were to entertain the Defendant's substantive Commerce Clause contentions, it would readily conclude that they fail substantively. The Defendant argues that in order to pass Commerce Clause muster the misprision statute must regulate conduct that substantially affects interstate commerce. Citing to the recent Supreme Court decision in National Federation of Independent Business v. Sebelius, the Defendant explains that Congress cannot regulate "inactivity" under the Commerce Clause. 132 S. Ct. 2566, 2587 & 2642-43 (2012) (Roberts, C.J., and Scalia, J., dissenting). According to the Defendant, the only element of misprision that involves "activity" is the concealment element, because the elements of misprision requiring knowledge of a federal felony and the failure to disclose the felony to a federal authority involve no activity. Thus, the Defendant asserts that the federal nexus must turn upon the concealment element and whether it affects interstate commerce. He maintains that in cases in which the alleged concealment is a verbal statement, the concealment can only affect interstate commerce if the misrepresentation was made to a federal authority. Therefore, the Defendant argues that the requirement that the concealment be to a federal authority is the only interpretation that renders the misprision statute constitutional as misprision is pled in the instant Indictment.

8

At the August 27 hearing, the Government succinctly replied that enactment of the misprision statute was properly within Congress's powers because the statute requires the commission of an underlying federal felony, in this case a conspiracy to distribute controlled substances. Although the Defendant contends that knowledge of a federal felony is not activity and, therefore, cannot be the basis for the enactment of the statute, the commission of the underlying felony (which is the first element of misprision) and the concealment of that same underlying felony both involve activity, rather than inactivity. The requirement that a federal felony was committed and that the defendant actively concealed the federal felony provides the federal nexus. Thus, the basis for federal jurisdiction in this case is that the Defendant's alleged action of concealing the drug conspiracy, by making material misrepresentations to state authorities or private citizens, hindered the ultimate federal prosecution of the drug conspiracy.

It is clear beyond peradventure that Congress may regulate agreements to distribute controlled substances under the Commerce Clause. See United States v. Tucker, 90 F.3d 1135, 1140 (6th Cir. 1996) (observing that "Lopez does not give us cause to question Congress's power to regulate an activity as clearly commercial as drug trafficking"). Although the misprision statute is not used exclusively to curtail drug trafficking, it does always require an underlying federal felony, which must have been properly enacted under Congress's Commerce Clause power or one of its other enumerated powers. In this case, the alleged underlying felony is a drug trafficking conspiracy. Accordingly, the Defendant's "as applied" Commerce Clause challenge to the misprision statute must fail.[2]

_____

[2]The Court also questions the procedural viability of the Defendant's argument, which, in essence, asks this Court to find that "purely local" concealment of a drug trafficking conspiracy by material misrepresentations to state officials or private individuals cannot affect interstate

*(2) Case Law*

The parties are at odds over the interpretation of the misprision cases involving concealment in the form of false statements by a defendant. Defendant Baumgartner argues that in all of the cases involving misrepresentation by a defendant, the untruthful statement was made to a federal officer or authority.[3] Thus, based upon his survey of cases, he contends that when misprision

commerce. He argues [Docs. 59 & 62] that he can properly bring this "as applied" Commerce Clause challenge, citing to <u>Gonzales v. Raich</u>, 545 U.S. 1 (2005), and two cases from the Court of Appeals for the Sixth Circuit in which the defendants' convictions were reversed because their actions did not substantially affect interstate commerce. <u>See</u> <u>United States v. Ford</u>, 639 F.3d 718, 721 (6th Cir. 2011) (holding that a state legislator's breach of a state duty to disclose his financial interests to state entities did not violate 18 U.S.C. 1001, which prohibits lying or concealing a material fact "in any matter within the jurisdiction" of the federal government); <u>United States v. Wang</u>, 222 F.3d 234,239-40 (6th Cir. 2000) (holding that the jurisdictional element of the Hobbs Act is not satisfied by a "fortuitous or speculative" connection to commerce, such as the defendant's robbery of $4200 from two individuals in their home).

In <u>Raich</u>, the Supreme Court held that the Controlled Substances Act could properly be applied to individuals growing marijuana for local medicinal use under the direction of a doctor and in compliance with California law. <u>Id.</u> at 23-25. "'Where the class of activities is regulated and that class is within the reach of federal power, the courts have no power to excise, as trivial, individual instances of the class.'" <u>Id.</u> at 23 (quoting <u>Perez v. United States</u>, 402 U.S. 146, 154(1971)0 (internal quotation omitted). Since that time, the Court of Appeals for the Sixth Circuit has observed that the reasoning in <u>Raich</u> "sound[ed] the death knell" for "as applied" Commerce Clause challenges in cases in which the federal statute at issue itself is a proper exercise of Congress's power under the Commerce Clause. <u>United States v. Corp</u>, 668 F.3d 379, 385 n.1 (6th Cir. 2012) (declining to entertain "as applied" challenge to child pornography statute).

Although this Court has already found that the Commerce Clause does not apply to the misprision statute, it is clear that the Controlled Substances Act was properly enacted under the Commerce Clause. In light of Congress's well-settled authority to regulate drug trafficking, Defendant's "as applied" challenge to the alleged local conduct would seem but a small instance of that well-regulated class. Therefore, the instant challenge does not appear to be procedurally viable.

[3]<u>United States v. Williams</u>, No. 07-6358, 2009 WL 579332 (6th Cir. Mar. 9, 2009) (Nashville police officer made false statements about drug theft to local police and DEA); <u>United States v. Maese</u>, 146 F. App'x 276 (10th Cir. 2005) (defendant gave false information to customs agent regarding identity of marijuana traffickers); <u>United States v. Clemons</u>, No. 97-5719, 1998 WL 833770 (6th Cir. Nov. 19, 1998) (sheriff falsely denied knowledge of marijuana operation to

10

is alleged to have occurred by verbal concealment, the circumstance that the concealment be to a federal authority is an element of the offense. The Government contends that the Defendant cites to no case that states that an element of misprision of a felony is that the concealment be directed to a federal authority. Instead, the Government points to cases[4] in which the concealment by misrepresentation was to a non-federal individual or entity. The Defendant distinguishes the Government's cases, contending either that a federal authority was also involved or that the defendant pled guilty despite the absence of the required federal authority figure because the plea offer was so advantageous. After examining the cases cited by the parties, the Court discerns no

---

FBI agents, after instructing daughter and son-in-law to dispose of marijuana plants); United States v. Wesley, No. 96-30258, 1997 WL 242335 (9th Cir. May 8, 1997) (defendant lied to "Agent" about injuries to child); United States v. Wilkes, No. 92-5037, 1992 WL 188133 (4th Cir. Aug. 7, 1992) (defendant, among other acts of concealment such as harboring drug traffickers and assisting in the disposal of evidence, made false statements and omissions regarding drug trafficking to postal inspector); United States v. Salinas, 956 F.2d 80 (5th Cir 1992) (defendant made untruthful statements to grand jury about seeing perpetrator of murder for hire on certain weekend); United States v. Ciambrione, 750 F.2d 1416 (9th Cir. 1982) (partial, truthful information to Secret Service agent about counterfeiting operation held not to be concealment); United States v. Sampol, 636 F.2d 621 (D.C. Cir. 1980) (defendant lied to grand jury and FBI agent about his knowledge of bombing and resulting murder of ambassador); United States v. Hodges, 566 F.2d 674 (9th Cir. 1977) (defendant lied to FBI agents about location of kidnaping victim); United States v. Weekley, 389 F. Supp. 2d 1293 (S.D. Ala. 2005) (defendant made false statements to FBI about a bank robbery committed by her husband).

[4]United States v. Walkes, 410 F. App'x 800 (5th Cir. 2011) (finding no plain error where factual basis of guilty plea stating that defendant concealed health care fraud from clinic employees by falsely assuring them that the clinic had complied with heath care regulations was sufficient to establish elements of misprision); United States v. Robinson, 344 F. App'x 990 (5th Cir. 2009) (concluding factual basis for guilty plea to misprision sufficient where factual basis alleged defendant concealed payment for subscription to a child pornography website from credit card company by agreeing to be billed by a third party); United States v. Sessions, Nos. 11-1756 & 00-1791, 2000 WL 1456903 (8th Cir. Oct. 2, 2000) (affirming sufficiency of evidence of misprision based upon defendant giving police partial, misleading information about burglary of gun shop); see also United States v. Williams, No. 07-6358, 2009 WL 579332 (6th Cir. Mar. 9, 2009) (in affirming misprision conviction, court relied upon Nashville police officer's false statements about drug theft to local police as well as the false statements to the DEA).

*requirement* or element that the concealment be to a federal officer or authority. That there are cases that happen to involve misrepresentations to a federal authority does not convert that likely factual scenario into a legal requirement or element of the offense.

In his reply brief, the Defendant states that the Court of Appeals for the District of Columbia held that "[m]isprision basically requires knowledge of the commission of a felony, and wilful concealment *from the authorities* by some affirmative act" and defines authorities as an "appropriate investigatory or judicial authority" such as the grand jury or an FBI agent. United States v. Sampol, 636 F.2d 621, 653-54 (D.C. Cir. 1980) (emphasis added). From this language, he concludes that concealment must be to a federal authority.

In Sampol, the Court analyzed whether the defendant's consecutive sentences for his convictions for misprision and false declarations to the grand jury, both based upon false statements regarding his knowledge of the murder of the Chilean ambassador, violated the Double Jeopardy Clause of the Fifth Amendment. Id. at 651-56. The court conducted a Blockburger analysis, examining the elements of the two statutes to determine if each required an element that the other did not. Id. at 651-54. The court concluded that although misprision could be completed without making false declarations to a grand jury, in the case before it, the government had relied primarily upon the defendant's false statements to the grand jury to prove the concealment element of misprision. Id. at 653. The Court summarized as follows:

> Thus, when the elements of the two offenses as charged in the indictment are compared it is apparent that [the defendant's] false declarations to the grand jury, which concealed his knowledge, also concealed the commission of the felony from the grand jury. This evidence satisfied the required elements of misprision as set forth in the court's instructions to the jury: first, the evidence indicated that [the defendant] had knowledge about the facts and circumstances of

12

the felony; second, that the felony was committed within the United States; third, that the grand jury was an "appropriate investigatory or judicial authority;" and, fourth, that [the defendant] in testifying falsely before the grand jury "took affirmative steps to conceal the crime."

Id. at 654 (quoting from the trial transcript). The Court finds, as discussed more fully with regard to the pattern jury instruction issue below, the instruction that the grand jury was an "appropriate investigatory or judicial authority" relates to the notice element of misprision of a felony, not to the concealment element. That the defendant in Sampol concealed his knowledge of the federal felony by testifying falsely before the grand jury shows that false statements to a federal authority are *sufficient* to prove misprision. Nothing about the court's analysis in Sampol indicates that false statements are required to be to a federal authority in order to satisfy the concealment element.

The Defendant provides the Court with a thirty-eight page Appendix of Cases Citing 18 U.S.C. §4 [Doc. 53], listing some 600 misprision cases. Despite this exhaustive review of the case law, the Defendant does not provide a single case that states that the concealment element of misprision must be to a federal authority when the concealment is a verbal misrepresentation. Instead, the Defendant's analysis of the case law has established the opposite conclusion.

*(3) Pattern Jury Instructions*

The Defendant argues that the pattern jury instructions on misprision of a felony for the Fifth and Tenth Circuits[5] require that the misrepresentation be to a federal authority. The Court disagrees with this interpretation.

The Fifth Circuit's pattern jury instruction reads as follows:

---

[5]The Sixth Circuit does not have a pattern jury instruction for misprision of a felony.

13

Title 18, United States Code, Section 4, makes it a crime for anyone to conceal from the authorities the fact that a federal felony has been committed. _____ [predicate offense] is a federal felony.

For you to find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

First: That a federal felony was committed, as charged in Count ___ of the Indictment;

Second: That the defendant had knowledge of the commission of the felony;

Third: That the defendant *failed to notify* an authority as soon as possible. An "authority" includes a federal judge or some other federal civil or military authority, such as a federal grand jury, Secret Service or FBI agent; and

Fourth: That the defendant did an affirmative act, as charged, to conceal the crime.

Mere failure to report a felony is not a crime. The defendant must commit some affirmative act designed to conceal the fact that a federal felony has been committed.

Criminal Pattern Jury Instructions (Fifth Circuit) 2.08 (2001) (emphasis added). The Tenth Circuit

pattern jury instruction similarly provides:

The defendant is charged in count ___ with a violation of 18 U.S.C. section 4.

This law makes it a crime to conceal from the authorities the fact that a federal felony has been committed. [_____] is a federal felony.

To find the defendant guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:

First: a federal felony was committed, as charged in count ___ of the

14

Indictment;

Second: the defendant had knowledge of the commission of that felony;

Third: the defendant *failed to notify* an authority as soon as possible. An "authority" includes a federal judge or some other federal civil or military authority, such as a federal grand jury, Secret Service or FBI agent; and

Fourth: the defendant did an affirmative act, as charged, to conceal the crime.

Mere failure to report a felony is not a crime. The defendant must commit some affirmative act designed to conceal the fact that a federal felony has been committed.

Criminal Pattern Jury Instruction (Tenth Circuit) 2.08 (2011) (emphasis added).

The Defendant asserts that both of these instructions require the "authority" to be federal. What the Defendant overlooks, but what the Court finds is that the reference to an authority is solely with respect to the "notice" element (the requirement that a defendant notify an authority), rather than the concealment element. Moreover, both of these instructions state that an authority "includes" federal authority figures such as federal judges, Secret Service agents, and the like. The fourth element of concealment in each pattern instruction contains *no requirement* that the concealment be as to a federal authority. Indeed, concealment could be a non-verbal action (*e.g.*, hiding a person or money, flushing drugs down a toilet, etc.), which would not be made to anyone.[6] Accordingly, a review of the plain language of the pattern jury instructions from the Fifth and Tenth Circuits does not support the Defendant's argument.

---

[6]The Defendant argues that only when the concealment is via a verbal misrepresentation (as opposed to a non-verbal action) is there a requirement that the concealment be made to a federal authority. The Defendant's distinction between verbal and non-verbal concealment lacks any support in case law or other legal basis.

15

In summary, the Court finds that the plain language of the misprision statute does not require that the concealment element be "directed to" anyone, much less a federal authority. The Court finds that this interpretation of the statute would not run afoul of the Commerce Clause (even if it applied) because the federal nexus is established by the statute's requirement that the underlying felony be a federal felony and that the defendant have concealed that federal felony. Moreover, neither the case law applying 18 U.S.C. § 4, nor the pattern jury instructions cited by the Defendant, support his argument that the concealment must be to a federal authority. Accordingly, the Court finds that the instant Indictment alleges all the elements of misprision of a felony and recommends that the Defendant's Motion to Dismiss Counts 1 Through 7 for Failure to Allege an Offense [Doc. 17] be denied.

## B. First Amendment Issue

The Defendant argues [Docs. 21, 22, and 49] that the instant federal prosecution, which seeks to punish him for speaking to state authorities and private citizens, violates his rights under the First Amendment. Although the Defendant acknowledges that the First Amendment does not protect speech integral to criminal behavior, he characterizes the Supreme Court's recent decision in Alvarez as sending "a message that we are going to be cautious about criminalizing speech even when we deem it and know it to be untruthful." [Trans., Doc. 57, p. 24] The Government responds [Doc. 40] that the Supreme Court has definitively held that the First Amendment "does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent." Wisconsin v. Mitchell, 508 U.S. 476, 489 (1993).

The Court begins by noting that the misprision of a felony statue does not punish

speech.  See 18 U.S.C. §4.  One way to commit the concealment element of misprision is by making

a verbal misrepresentation to conceal a federal felony.  The Court finds that this use of speech to

prove an element of the misprision statute does not violate the First Amendment.  The Supreme

Court has long "reject[ed] the contention" that "that the constitutional freedom for speech and press

extends its immunity to speech or writing used as an integral part of conduct in violation of a valid

criminal statute." Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 449 (1949).  Indeed, "speech

is not protected by the First Amendment when it is the very vehicle of the crime itself."  United

States v. Varani, 435 F.2d 758, 761 (1970) (upholding statute prohibiting impeding official duties

of government employee by force or threat of force against First Amendment challenge of defendant,

who wrote threatening letter to IRS agent).[7]  In the instant case, the Defendant's alleged verbal

misrepresentations are the means by which he concealed a federal felony and, thus, the vehicle of

the alleged crime.

---

[7]The Government cites to numerous additional cases that share this holding.  United
States v. Rowlee, 899 F.2d 1275, 1278 (2d Cir. 1990) (holding that actions of defendants
convicted of conspiracy to defraud the United States "was not protected by the First Amendment
merely because, in part, it may have involved the use of language"); United States v. Daly, 756
F.2d 1076, 1082 (5th Cir. 1985) (emphasizing that "an illegal course of conduct is not protected
by the First Amendment merely because the conduct was in part initiated, evidenced, or carried
out by means of language'); United States v. Barnett, 667 F.2d 835, 842 (9th Cir. 1982)
(observing that "[t]he first amendment does not provide a defense to a criminal charge simply
because the actor uses words to carry out his illegal purpose"); United States v. Stone, No.
10–20123, 2011 WL 795164, *4 (E.D. Mich. Mar. 1, 2011) (determining that statutes on
seditious conspiracy and conspiracy to use weapons of mass destruction did not violate the
defendants' First Amendment rights even though the prosecution involved the defendants'
speech); United States v. Hendrickson, 664 F. Supp. 2d 793, 809 (E.D. Mich. Oct. 7, 2009)
(reasoning that "[i]n those instances, where speech becomes an integral part of the crime, a First
Amendment defense is foreclosed even if the prosecution rests on words alone") (internal
quotation omitted); Webb v. Alaska, 580 P.2d 295, 302 (Alaska 1978) (holding that defendant's
false statements, forming the basis for his indictment and conviction for being an accessory after
the fact to first degree murder, were not protected by the First Amendment because they were
"the very vehicle of the crime itself").

The Defendant contends that the Government has misconstrued his argument. He relies upon the Alvarez case, in which a plurality of the Supreme Court determined that the Stolen Valor Act violated the First Amendment, to argue that an individual cannot be prosecuted federally for purely private speech by a non-federal official directed to state authorities or private citizens. See 132 S. Ct. at 2545. To the extent that the Court understands this argument, it sounds like a reiteration of the Defendant's federalism argument, which the Court addresses in section C below. The short answer to distinguish Alvarez is that the Stolen Valor Act punishes certain speech based upon its content, whereas the misprision statute punishes concealment which can be proven by evidence of speech. Moreover, the quote that the Defendant relies upon, that "[18 U.S.C. s]ection 1001's prohibition on false statements made to Government officials, in communications concerning official matters, does not lead to the broader proposition that false statements are unprotected when made to any person, at any time, in any context[,]" is made in support of Justice Kennedy's conclusion that false speech as a category is not "presumptively unprotected" by the First Amendment. Id. at 2545, 2547-48. The Court finds that this analysis does not alter the Supreme Court's well-settled precedent that speech integral to criminal conduct is not protected by the First Amendment; and Justice Kennedy, in fact, says as much: "These examples [given by the government in support of its argument that false speech should be deemed a new category of unprotected speech], to the extent that they implicate fraud or speech integral to criminal conduct, are inapplicable here." Id. at 2547.

Because the alleged misrepresentations by the Defendant are speech integral to the commission of misprision of a felony as alleged, the instant prosecution does not violate the First Amendment. The Court recommends that the Defendant's Motion to Dismiss Counts 1 through 7:

18

The Charges as Alleged Conflict with First Amendment Principles and Are Unconstitutional [Doc. 21] be denied.

## C. Tenth Amendment Issue

The Tenth Amendment to the United States Constitution provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." Here, the Indictment specifically alleges that, at all times relevant to the charges, Defendant Baumgartener was a sitting Knox County Criminal Court Judge. Based on this factual allegation, the Defendant argues [Docs. 19, 20, and 50] that requiring a state judge to report a federal crime to federal authorities or face federal prosecution exceeds Congress's power under the Constitution, thereby intruding upon the authority of the State. The Defendant's Tenth Amendment argument is predicated on his contention that the statute in question requires the Defendant, as a state official, to enforce federal law or risk prosecution. As such, he argues that this violates the Tenth Amendment because Congress has intruded upon the sovereignty and authority of the state.

The Defendant argues that because he is referenced in the Indictment as a state judge, the Indictment violates the Tenth Amendment. The Defendant does not argue that Congress's passing of the misprision statute is unconstitutional under the Tenth Amendment but, instead, argues only that "as applied" to him the statute violates the Tenth Amendment. This, in legal parlance, is an "as applied" constitutional challenge.[8] The Defendant relies upon the reasoning in <u>Printz v.</u>

---

[8]The Government argues that no case exists in which a federal criminal indictment was dismissed because its application to a defendant violated the Tenth Amendment. The Defendant contends that the Supreme Court has recently permitted an individual to bring a Tenth

United States, in which the Supreme Court held that the federal government may not require state officers "to administer or enforce a federal regulatory program." 521 U.S. 898, 935 (1977) (analyzing the Brady Act's requirement that local chief law enforcement officers help administer federal gun sales legislation). From this holding, the Defendant maintains that it logically follows that "the federal government may not punish a state official for failing to report a federal crime to federal authorities." [Doc. 20, p. 5 (emphasis omitted)]

The short answer is that neither the misprision statute nor the charges in the Indictment, compels any state official, including the Defendant, to execute or enforce any federal law or regulatory scheme. Rather, the misprision statute embodies a prohibition for any person, whether a state official, judge or otherwise, who knows about the commission of a federal felony and who fails to notify the authorities, to affirmatively act to conceal the crime. The misprision statute compels nothing (inasmuch as mere knowledge or mere failure to report does not constitute a violation of the statute) but prohibits the affirmative act of concealment after knowledge. See Goldberg, 862 F.2d at 104 (holding that "[m]ere knowledge of the commission of the felony or

_____

Amendment challenge, stating that "[t]he individual, in a proper case, can assert injury from governmental action taken in excess of the authority that federalism defines. [The defendant's] rights in this regard do not belong to a State." Bond v. United States, 131 S. Ct. 2355, 2363-64 (2011). This is because the benefits of federalism enure to individuals, as well as to the states. Id. at 2364. Thus, an individual can possess standing to allege that the statute under which he or she is charged is unconstitutional because it violates the Tenth Amendment without asserting "a State's constitutional interests, even if a State's constitutional interests are also implicated[,]" as long as the individual can also meet Article III requirement of a case or controversy causing some actual injury. Id. at 2365-66 & 2367 (Ginsberg, J., concurring) (observing that any defendant "has a personal right not to be convicted under a constitutionally invalid law"). In this case, Defendant Baumgartner faces a concrete injury of incarceration if convicted of misprision. Thus, under the reasoning in Bond, the Defendant may challenge the application of the misprision statute to him as violating federalism concerns. However, mere standing and the ability to advance this argument is separate and distinct from the ability to demonstrate an actual violation of the Tenth Amendment in this case.

failure to report the felony, standing alone, is insufficient to support a conviction of a misprision of a felony"). Additionally, the misprision statute is not directed at state officials but at all citizens. Moreover, what the misprision statute does not do is preclude, exempt, or otherwise immunize any public official (including the Defendant) simply because they are public officials or state judges.[9]

The legal answer to the Defendant's argument is that Mr. Baumgartner is not being charged "because" of his position as a state judge, but rather Defendant is being charged for violating the statute regardless of his position as a state judge. Furthermore, the logical extension of the Defendant's argument is that he is somehow exempt or immune from being charged for violating the statute "because" he is a state judge. This argument is as wrong as any alleged contention by the Government that there is some additional statutory onus or statutory application to the Defendant "because" he is a state judge.[10] With regard to the application of the misprision statute

_____

[9]To the contrary, prosecuting state officials for violating federal laws does not transgress the separation of powers or "contravene some power specifically reserved to the State by the Constitution of the United States." See United States v. Bailey, 990 F.2d 119, 126 (4th Cir. 1993) (rejecting a state representative's argument that his prosecution for a Hobbs Act violation for kickbacks in relation to pending gambling legislation ran afoul of the Tenth Amendment). State officials have been convicted of misprision of a felony in a number of federal circuits, including our own. See United States v. Williams, No. 07-6358, 2009 WL 579332 (6th Cir. Mar. 9, 2009) (affirming conviction of Nashville police officer for misprision of a felony for concealing a federal drug crime); United States v. Clemons, No. 97-5719, 1998 WL 833770 (6th Cir. Nov. 19, 1998) (upholding misprision conviction of county sheriff who concealed federal drug crime); see also United States v. Caraballo-Rodriguez, 480 F.3d 62, 64-65 (1st Cir. 2007) (affirming misprision conviction of Puerto Rican police officer who concealed information about a drug crime); United States v. Daddano, 432 F.2d 1119, 1122 (7th Cir. 1970) (upholding misprision conviction of county sheriff's department investigator who concealed information about a bank robbery). Moreover, requiring that someone not conceal a known violation of federal law is a far cry from requiring that someone execute or enforce that same federal law.

[10]In his reply brief [Doc. 50], the Defendant interprets the Government's response [Doc. 35] to allege that public officials have a higher duty to report federal felonies than the average citizen. However, the context of the Government's argument was and is that just because the Defendant was a state judge, such status does not exempt him from prosecution, and that state

to the Defendant, he perhaps stated it best in his brief when he wrote "[i]t was unnecessary for the prosecution in this case to include in the Indictment a specific allegation that at all times relevant to the Indictment Mr. Baumgartner was a sitting Criminal Court Judge in Knox County, Tennessee." [Doc. 50, p. 4] While the Defendant's position as a state judge may be essential in the factual context of the Government's proof, it is not essential nor germane to the legal elements constituting the offense. The legal issue is whether or not the Defendant violated the statute, and the fortuity of his being a state judge has no legal significance in that determination.

Accordingly, the Court declines to conclude that the application of the misprision statute to the Defendant violates the Tenth Amendment because he was a state judge. The Court recommends that the Defendant's Motion to Dismiss Indictment: Prosecution Violates the Tenth Amendment to the United States Constitution [Doc. 19] be denied.

## D. Abuse of Prosecutorial Discretion

Finally, the Defendant argues [Docs. 23, 24, and 48] that the Government abused its discretion in bringing the instant prosecution because the alleged crimes implicate no substantial federal interest. He contends that, instead, the United States Attorney's office (USAO) is vindictively prosecuting him in response to public outrage over his judicial diversion in his state case, which permitted him to draw his state pension, and disaffection over a comment he made

---

officials are often prosecuted under this statute. The suggestion of an argument that the misprision statute is of "particular applicability to public officers" gleaned from the Government's passing reference to a quotation from a law review article is of no legal moment. At the motion hearing, the Government argued that the misprision statute applies to all citizens and that the misprision statute did not "commandeer" the Defendant to take certain action in his position as a state judge.

regarding federal discovery in a state murder trial. He asserts that the prosecutor's animus is revealed by the Government's failure to comply with its own Petite policy in this case, the instant novel and insufficient charges advanced by the Government, and the public, "SWAT team-type" manner of his arrest in this case. The Defendant calls for the dismissal of the Indictment or, at the very least, that the Court require the Government to provide additional discovery with respect to the allegations of prosecutorial vindictiveness.

The Government responds [Doc. 41] that the Defendant has failed to show that it sought the instant charges based upon the Defendant's exercise of a protected right or that prosecutors had any stake in the exercise of that right. Additionally, the Government contends that its compliance with the Department of Justice's Petite policy, which is an internal policy guiding whether federal prosecutors should charge individuals who are already being prosecuted at the state level, is not a basis upon which a defendant may challenge his federal charges.

"In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978). The prosecutor's decision to prosecute an individual is entitled to a "'presumption of regularity[,]'" and "'in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.'" United States v. Armstrong, 517 U.S. 456, 464 (1996) (quoting United States v. Chemical Foundation, Inc., 272 U.S. 1, 14-15 (1926)). In light of the broad discretion granted prosecutors in charging a defendant and the many factors involved in the decision to prosecute, courts are properly reluctant to scrutinize the decision. United States v. Talbot, 825 F.2d 991, 999 (6th Cir. 1987). Nevertheless, the prosecutor's decision

to prosecute may not be based upon the defendant's choice to exercise his or her constitutional rights. United States v. Davis, 15 F.3d 526, 529 (6th Cir. 1994).

"[I]n order to show vindictive prosecution there must be (1) exercise of a protected right; (2) a prosecutorial stake in the exercise of that right; (3) unreasonableness of the prosecutor's conduct; [and] (4) the intent to punish the defendant for exercise of the protected right." United States v. Suarez, 263 F.3d 468, 479 (6th Cir. 2001). If the defendant establishes the first three factors, these factors may demonstrate a "realistic likelihood of vindictiveness," that helps show the fourth factor, subject to rebuttal by the government. Id. The mere appearance of vindictiveness from the circumstances is insufficient to warrant dismissal. United States v. Andrews, 633 F.2d 449, 455 (6th Cir. 1980) (en banc). Instead, a defendant must show a "realistic likelihood of vindictiveness." Id.

The Court finds that the Defendant has failed to raise a *prima facie* case of "a realistic likelihood of prosecutorial vindictiveness[.]" See United States v. Adams, 870 F.2d 1140, 1146 (6th Cir. 1989). First, the Defendant has not demonstrated that the instant federal prosecution was brought due to his exercise of a protected right. "It is well established that due process protects against prosecutorial retaliation for a defendant's exercise of a statutory or constitutional right." United States v. Moon, 513 F.3d 527, 535 (6th Cir. 2008). The Defendant contends that he has a statutory right[11] to collect his state pension and that the most punitive effect of a conviction in the instant case will be the loss of that pension. The Defendant has provided no evidence or even a suggestion of evidence that the USAO sought the instant charges because the Defendant is collecting

---

[11]The Defendant does not provide the Court with the statute establishing the "statutory right," upon which the Government is allegedly interfering.

24

a state pension. He asserts that the public was outraged when it learned that he was able to keep his pension by completing judicial diversion following his state conviction for official misconduct. He also contends that this public outrage was in part the motivation for the Tennessee legislature's amendment of Tennessee Code Annotated section 40-35-313(a)(1)(B)(i), to exclude elected or appointed officials from eligibility for judicial diversion for an offense committed in the person's official capacity or involving the duties of his or her office. The actions of Tennessee legislators or the public's outrage cannot be attributed to the instant federal prosecutors. The Defendant's contention that the manner of his arrest also shows prosecutorial animus is similarly unavailing, because the actions of the arresting agents and officers cannot be imputed to the USAO.[12]

Moreover, the Defendant does not establish a realistic likelihood of prosecutorial vindictiveness with his allegations regarding the Petite policy. First, as the Defendant acknowledges, the DOJ's internal Petite policy does not provide a basis for the dismissal of the charges. United States v. Renfo, 620 F.2d 569, 574 (6th Cir. 1980). Second, at the August 27 hearing, AUSA Lewen stated that the Government has complied with the Petite policy in this case. Third, other than stating his opinion that the United States has no substantial federal interest in this case, the Defendant points to nothing to suggest that the Government has violated its Petite policy. The misprision statute

---

[12]The Court makes no finding about the circumstances surrounding the Defendant's arrest on May 15, 2012, except that no evidence exists that the circumstances of his arrest were dictated or directed by the prosecutors in this case, rather than by law enforcement. The actions of law enforcement will not be attributed to the prosecutor for purposes of establishing vindictive prosecution. United States v. Spears, 159 F.3d 1081, 1087 (7th Cir. 1998); see also United States v. Woods, 305 F. App'x 964, 967 (4th Cir. 2009). At the August 27 hearing, Attorney Bosch stated that with regard to the "method and manner of Mr. Baumgartner's arrest," the defense "believe[s] that that very well may have had some direction from the office so their conduct very well can be imputed back in that circumstance to the office." [Trans., Doc. 57, p. 52] The Court finds that the Defendant's speculation that the USAO may have had some part in directing the manner of his arrest to fall short of objective evidence of prosecutorial vindictiveness.

25

requires that the Government must prove a federal felony, in this case a drug trafficking conspiracy, occurred. The Court finds that this federal felony reveals the federal interest at stake.

Finally, the Defendant suggests that the prosecutors may be retaliating against him for a remark he made in April 2009 in the state murder prosecution of Letalvis Cobbins, suggesting that federal prosecutors had not turned over all discovery gathered during Cobbins' federal prosecution for car jacking. The Defendant refers to an April 24, 2009, newspaper article in which he is quoted as saying, "'I am convinced as I sit here today we have not yet seen all the information that's in the possession of federal authorities,' Criminal Court Judge Richard Baumgartner said. 'I don't understand their attitude.'" Defendant Baumgartner argues that this statement "could hardly have engendered much sympathy from the TBI or the federal authorities." [Doc. 24, p.11] The Court finds this speculative argument falls far short of showing a reasonable likelihood of prosecutorial vindictiveness. There is no indication that Judge Baumgartner's disappointment with the state of "discovery" at this juncture resulted in any type of ruling, was ever communicated to the USAO, or that the USAO resented his statements sufficient to seek his indictment.

Accordingly, the Court finds that the Defendant has failed to show any realistic likelihood of prosecutorial vindictiveness in this case. He has not shown that the Government has any stake in his exercise of a protected right or that the prosecutors in the instant case have acted unreasonably. Because the Defendant has failed to make a *prima facie* case of prosecutorial vindictiveness, neither the dismissal of the indictment nor additional discovery into the Government's motives for bringing this case are warranted. The Court recommends that his Motion to Dismiss the Indictment as an Abuse of Prosecutorial Discretion [Doc. 23] be denied.

### III.  CONCLUSION

After carefully considering the motions, responses, replies, and oral arguments and after reviewing the relevant legal authorities, the Court finds no basis to dismiss the Indictment. Accordingly, the Court **RECOMMENDS** that the Defendant's motions to dismiss the Indictment [**Docs. 17, 19, 21, and 23**] be **DENIED**.[13]

Respectfully submitted,

    s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[13]Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party, **"*or at some other time the court sets[.]*"**  Fed. R. Crim. P. 59(b)(2) (as amended).  Failure to file objections within the time specified waives the right to review by the District Court.  Fed. R. Crim. P. 59(b)(2) (emphasis added); see  United States v. Branch, 537 F.3d 582, 587 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general.  Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986).  Only specific objections are reserved for appellate review.  Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).